UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| THOMAS URBANSKI, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:18cv1420(VLB) |
| | : | |
| OFFICER LAMBERT, ET AL., | : | |
| Defendants. | : | |

**INITIAL REVIEW ORDER – AMENDED COMPLAINT**

The plaintiff, Thomas E. Urbanski ("Urbanski"), resides in Torrington, Connecticut. He has filed an amended complaint under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Rehabilitation Act ("RA"), 29 U.S.C. § 794, against the Department of Correction ("DOC"), Officer Lambert and Counselor Supervisor Moore. *See* Am. Compl., ECF No. 13, at 1 ¶ 2. For the reasons set forth below, the amended complaint is DISMISSED IN PART.

I.  Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

II. <u>Facts</u>

The facts are set forth on pages two through seven of the amended complaint. *See* Am. Compl. at 2-7 ¶¶ 6-37. On January 17, 2018, at Osborn Correctional Institution ("Osborn"), Urbanski wrote to Counselor Supervisor Moore about problems that he had been having with Inmate Craig, who slept in the bunk next to Urbanski in J-1 Dorm. Urbanski sought to be moved to another area of the dorm because Craig was constantly masturbating on his bunk. On January 26, 2018, Urbanski sent a second written request to Counselor Supervisor Moore seeking to be moved away from Inmate Craig.

On February 5, 2018, Urbanski spoke to Officer Lambert and informed her that Inmate Craig had threatened to kill him if he continued to report Craig's behavior to correctional staff. On February 8, 2018, Urbanski wrote to Counselor Supervisor Moore and indicated that Inmate Craig had made repeated threats to

kill him.  Counselor Supervisor Moore stated that he would take care of the problem.

On February 28, 2018, Urbanski sent a written request to Counselor Supervisor Moore indicating that Craig was still threatening to harm him.  On March 14, 2018, Urbanski informed Officer Lambert that Craig had threatened to break his neck.  Officer Lambert told Urbanski to stop bothering her.  Less than an hour later, Craig assaulted Urbanski as he sat in his wheelchair.  Officer Lambert did not immediately request assistance from other officers to handle the altercation.   Staff members eventually arrived at the scene of the altercation.  Several officers escorted Urbanski to the medical unit and several officers escorted Craig to the restrictive housing unit.

Fewer than two months later Plaintiff again sought Supervisor More's protection. On May 1, 2018, Urbanski wrote to Counselor Supervisor Moore indicating that a different Inmate Williamson threatened to strike him.  On May 8, 2018, Urbanski submitted a second request regarding threats made by Williamson.  On May 9, 2018, Counselor Supervisor Moore instructed Urbanski to deal with Williamson on his own.  On May 12, 2018, Williamson smashed Urbanski's television set and physically assaulted Urbanski using his fists and a metal object.  Correctional officers responded to the scene of the assault and escorted both Williamson and Urbanski  to the restrictive housing unit.

On May 13, 2018, Urbanski had two seizures.  Medical staff members moved Urbanski to the hospital unit.  When Urbanski "came out of the seizure" he

noticed that he had defecated on himself. Urbanski informed Officer Lambert that he needed to take a shower and to change into clean clothes. Officer Lambert laughed at Urbanski, accused him of reporting her alleged failure to protect him from the assault by Craig to other prison officials and left Urbanski to "sit" in his own excrement. Every time that Officer Lambert walked by Urbanski's cell, Urbanski pleaded with her to permit him to shower and to provide him with clean clothes. Officer Lambert refused to grant Urbanski's requests and made no attempt to call a medical staff member or custody official to assist Urbanski. Later, during second shift, Nurse Steve permitted Urbanski to use the handicapped shower and provided him with clean clothes.

Urbanski developed a rash on his legs from sitting in his own excrement. He received treatment for the rash from a medical staff member. Urbanski wrote to Counselor Supervisor Moore and the warden at Osborn about Officer Lambert's conduct.

### III. Discussion

Urbanski asserts claims under the First and Eighth Amendments against Officer Lambert, a claim under the Eighth Amendment against Counselor Supervisor Moore and the DOC and claims under the RA and Title II of the ADA against Officer Lambert and the DOC. He seeks monetary damages from all defendants and sues Officer Lambert in her individual and official capacities, Counselor Supervisor Moore in his individual capacity and the DOC in its official capacity.

4

A.  Claims under the ADA and RA

The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA requires that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

To state a claim under Title II of the ADA or the RA, "a plaintiff must adequately plead that (1) he is a qualified individual with a disability; (2) [the defendant] is an "entity subject to the [A]cts; and (3) he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities or [the defendant] otherwise discriminated against him by reason of his disability." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Urbanski alleges that at the time of the events described in the amended complaint, he suffered from a disability that confined him to a wheelchair. *See* Am. Compl. at 3 ¶ 11. Thus, he arguably meets the first element of an RA or an ADA claim. He

also meets the second element because the RA and ADA are applicable to state prisons. See Wright, 831 F.3d at 72 (citing *inter alia Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that "[s]tate prisons fall squarely within the statutory definition of 'public entity'")).

Urbanski has asserted a First Amendment retaliation claim based on Officer Lambert's alleged refusal to permit him to shower because he had filed a written grievance and made oral complaints about her conduct in failing to protect him from an assault by another inmate.

The same allegations that support the retaliation claim may also be read together with other allegations to state a claim that Officer Lambert discriminated against him because of his disabled condition that required the use of a wheelchair. In addition, Urbanski's assertion that Officer Lambert called him a cripple and refused to permit him to or facilitate his use of a handicapped shower to clean himself suggests that she intended to discriminate against him because of his disability. Thus, the court concludes that Urbanski has alleged sufficient facts to meet the third element of the Title II ADA and RA standard. *See Escoffier v. City of New York*, No. 13-CV-3918 (JPO) (DF), 2017 WL 65322, at *6 (S.D.N.Y. Jan. 4, 2017) ("Read liberally, Plaintiff's allegation that, when faced with Plaintiff's inquiry regarding a reported assault, Balunas referred to Plaintiff as a psycho because he always gets assaulted plausibly alleges that Plaintiff was regarded as having an impairment. . . . Further, liberally construed, Plaintiff's allegations that Balunas was combative and hung up the phone on Plaintiff in response to his

queries plausibly state that Plaintiff was "denied the opportunity to ... benefit from the defendant's services, ... or was otherwise discriminated against by the defendant because of his disability.") (internal quotation marks and citations omitted)), *recommended ruling adopted by*, No. 13-CV-3918 (JPO) (DF), 2017 WL 3206337, at *1 (S.D.N.Y. July 27, 2017)).

To the extent that Urbanski seeks monetary damages against Officer Lambert in her individual capacity for violations of the RA and ADA, these claims are dismissed because Title II of the ADA and the RA do not provide for individual capacity suits for monetary damages. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Accordingly, the claims against Officer Lambert in her individual capacity for violations of the RA and Title II of the ADA are dismissed. *See* 28 U.S.C. § 1915A(b)(1). The court will permit the Title II ADA and RA claims to proceed against the DOC and Officer Lambert in their official capacities.[1]

---

[1] The court notes that Title V of the ADA, 42 U.S.C. § 12203(a), prohibits discrimination in the form of retaliation against any individual who "has opposed any act or practice made unlawful by this chapter." The court, however, does not construe the amended complaint as asserting a claim under Title V. To plead a *prima facie* case for retaliation in violation of the ADA, a plaintiff must show (1) he engaged in activity protected under the ADA; (2) the defendant was aware of the activity; (3) the defendant took an adverse action against the plaintiff; and (4) a causal connection between the protected activity and the alleged adverse action. *See Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002). Although Urbanski alleges that he was engaged in protected activity, filing grievances, those activities were not related to claims of discrimination. Rather, Urbanski complained the Officer Lambert had failed to protect him from threats made by another inmate to assault him. Thus, Urbanski has not alleged that he was engaged in activity protected by Title V of the ADA.

B. <u>Section 1983 Claims</u>

To state a claim under section 1983, a plaintiff must allege facts showing that the defendant, a person acting under color of state, law deprived him or her of a federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). Urbanski alleges that Officer Lambert and Counselor Supervisor Moore failed to protect him from harm in violation of the Eighth Amendment, Officer Lambert and the DOC subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment, Officer Lambert was deliberately indifferent to his medical need in violation of the Eighth Amendment and Officer Lambert retaliated against him in violation of the First Amendment.

1. <u>DOC</u>

Urbanski alleges that the DOC "has a policy and custom" of permitting officers who have exhibited deliberate indifference to inmates to remain on duty. Am. Compl. at 8 ¶ 47. He contends that this policy violates his rights under the Eighth Amendment.

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). DOC is a department within the executive branch of the State of Connecticut. *See* Conn. Gen. Stat. 4-38c ("There shall be within the executive branch of state government the following departments . . . Department of Correction. . . ."). As an entity within the executive branch of Connecticut's government, the DOC is not a person subject to liability under

section 1983. *See El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2018 WL 4604308, at *11 (D. Conn. Sept. 25, 2018) ("A correctional institution is not a "person" within the meaning of 42 U.S.C. § 1983 so there is no arguable legal basis for proceeding with a § 1983 claim against [New Haven Correctional Center]"); *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008) ("Department of Corrections is an arm of the State of Connecticut") (citation omitted). All claims section 1983 claims asserted against the DOC are DISMISSED with prejudice as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

### 2. Eleventh Amendment – Lambert

Urbanski seeks compensatory and punitive damages from Officer Lambert in both her individual and official capacities. The Eleventh Amendment to the United States Constitution bars claims for monetary damages against a state actor acting in his or her official capacity unless there is a waiver of this immunity by statute or the state consents to suit. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

There are no allegations that the State of Connecticut has consented to suit for claims brought against Officer Lambert under section 1983. Furthermore, section 1983 was not intended to override a state's sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979). Thus, to the extent that Urbanski seeks punitive and compensatory damages from Officer Lambert in her official capacity, such requests for relief are barred by the Eleventh Amendment. Accordingly, the

claims for monetary damages against Officer Lambert in her official capacity are DISMISSED with prejudice. *See* 28 U.S.C. § 1915A(b)(2).

3. First Amendment – Retaliation – Lambert

Urbanski alleges that Officer Lambert retaliated against him for exercising his First Amendment right to file a grievance or verbally complain regarding her conduct in failing to protect him from assault by Inmate Craig. Prison officials may not retaliate against inmates for exercising their constitutional rights. Thus, when prison officials take adverse action against an inmate, motivated by the inmate's exercise of a protected constitutional right, a section 1983 retaliation claim may be sustained. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws.").

To state a claim for First Amendment retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took an adverse action against [him or her], and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks and citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be

10

characterized as a constitutionally proscribed retaliatory act." *Id.* at 295 (internal quotation marks and citation omitted).

Urbanski has alleged that he verbally complained and filed grievances about the conduct of Officer Lambert in failing to protect him from the assault by Inmate Craig. Thus, Urbanski must have filed his grievance at some point on or after March 14, 2018, the date of the assault by Craig. The filing of an inmate request or grievance is protected activity. *See id.* at 294 ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (internal quotation marks and citations omitted). In retaliation for the grievance and verbal complaints, Officer Lambert left Urbanski to sit in his own excrement for at least several hours on May 13, 2018.

Considering the comments made by Officer Lambert regarding Urbanski's complaints about her prior conduct and the relatively short time period between the earliest date on which Urbanski could have filed a grievance regarding Officer Lambert's failure to protect him from the assault by Craig, March 14, 2018, and the date on which Officer Lambert allegedly refused to permit Urbanski to shower and to provide him with new clothes, May 13, 2018, Urbanski has stated a plausible retaliation claim against Officer Lambert. *See e.g., Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (affirming that it had not previously "drawn a bright line to define the outer limits beyond which a temporal relationship is too

attenuated to establish a causal relationship" and holding that temporal proximity sufficient to support an inference of a causal connection established where six months had elapsed and it was "plausible that the officers waited to exact their retaliation at an opportune time"); *Headley v. Fisher,* No. 06 Civ. 6331(PAC)(KNF), 2008 WL 1990771, at *18 (S.D.N.Y. May 7, 2008) (causal connection exists where officer referred to protected activity during retaliatory assault). The First Amendment retaliation claim will proceed against Officer Lambert in her individual capacity.

### 4. Eighth Amendment – Conditions of Confinement

In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities." *Id.*

To state a claim of failure to protect or deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a

life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer,* 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that Defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

      a.    <u>Unsanitary Conditions - Lambert</u>

Urbanski has alleged that during his confinement in the restrictive housing unit on May 13, 2018, he had two seizures and defecated on himself. For at least several hours after learning that Urbanski had defecated on himself, Officer Lambert refused to permit Urbanski to take a shower or contact someone else, including a medical nurse, to assist him in taking a shower, and denied his

13

request for clean clothes. Because he was forced to sit in his own excrement for a prolonged period, Urbanski suffered a rash on his legs.

Urbanski's allegations suggest that Officer Lambert deprived him basic human needs for sanitary conditions of confinement and clothing that is not soiled with excrement. Thus, Urbanski has met the objective prong of the Eighth Amendment standard. It may be inferred from the comments made by Officer Lambert that she subjected Urbanski to these deprivations for the purpose of causing him humiliation or harm. Accordingly, Urbanski has stated a plausible claim of deliberate indifference to his need for clean clothing and a plausible claim of deliberate indifference to his need for sanitary conditions of confinement in violation of the Eighth Amendment. These Eighth Amendment conditions claims will proceed against Officer Lambert in her individual capacity.

        b.      <u>Deliberate Indifference to Safety – Lambert and Moore</u>

It is well-established that the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody" and to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832-33 (internal quotation marks and citations omitted). Urbanski alleges that he faced a substantial risk of serious injury due to the potential assaults by both Inmate Craig and Inmate Williamson. Thus, he has met the objective prong of the Eighth Amendment failure to protect standard.

With regard to the subjective prong, Urbanski alleges that he repeatedly made both Officer Lambert and Counselor Supervisor Moore aware that Inmate

14

**Craig had threatened to physically harm him and made Counselor Supervisor Moore aware on multiple occasions that Inmate Williamson had threatened his physical safety. Neither defendant took steps to protect Urbanski from harm. The Eighth Amendment deliberate indifference to safety/failure to protect claims will proceed against Officer Lambert and Counselor Supervisor Moore in their individual capacities.**

### 5. Eighth Amendment – Medical Needs - Lambert

In his description of claims, Urbanski contends that Officer Lambert denied him access to sanitary facilities after he "awoke from his seizures", causing him to contract a rash from prolonged contact with his feces, in violation of the Eighth Amendment. *See* Am. Compl. at 8 § 45. In *Estelle v. Gamble,* 429 U.S. 97 (1976), the United States Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Id.* at 104 (internal quotation marks and citation omitted). The Court explained that "[t]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-105.

To state a claim for deliberate indifference to a serious medical need, two requirements must be met. Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir.

2003).  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).  Moreover, prison officials may violate the Eighth Amendment by exposing a prisoner to "an unreasonable risk of serious damage to his future health," *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

To satisfy the second subjective prong, a prison official or medical staff member must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions.  *See Salahuddin*, 467 F.3d at 279-80.  Mere negligent conduct does not constitute deliberate indifference.  *See id.* at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

Urbanski alleges that after "he awoke from his seizures," he informed Officer Lambert that he needed to see a nurse.  He contends that in refusing to grant his request, Officer Lambert was deliberately indifferent to a medical need.  Confined to a wheelchair, he needed and requested assistance getting to a handicapped shower because he had defecated on himself.  While he does not describe having suffered any serious medical symptoms at that time, it is

16

commonly known that unsanitary conditions, especially in a prison, poses a risk of serious infections and other health conditions. He was not provided access to the handicapped shower until the second shift on May 13, 2018. As a consequence of this deprivation Urbanski contracted an infection.

The court concludes that Urbanski has alleged that he suffered from a serious medical need at the time he awoke from his seizures, that he made Officer Lambert aware of a serious medical need and that she deprived him of sanitary facilities and assistance causing a skin eruption. Accordingly, the Eighth Amendment claim of deliberate indifference to a medical need against Officer Lambert is dismissed. See 28 U.S.C. § 1915A(b)(1).

## Orders

The court enters the following orders:

(1) The Section 1983 claims for monetary damages that are asserted against Officer Lambert in her official capacity are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2).

(2) The Section 1983 claims against the DOC and the RA and Title II ADA claims against Officer Lambert in her individual capacity are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

(3) The RA and Title II ADA claims will proceed against the DOC and Officer Lambert in their official capacities.

(4) The Eighth Amendment deliberate indifference to safety/failure to protect claims will proceed against Officer Lambert and Counselor

**Supervisor Moore in their individual capacities.**

**(5) The Eighth Amendment conditions of confinement claims and the Eighth Amendment deliberate indifference to medical needs claim will proceed against Officer Lambert in her individual capacity.**

**(6) The First Amendment retaliation claim will proceed against Officer Lambert in her individual capacity**

**In furtherance of these claims, the court enters the following additional orders:**

**(1) Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: Correctional Officer Lambert and Counselor Supervisor Moore and mail a copy of the amended complaint, [ECF No. 13], this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).**

**(2) The Clerk shall prepare a summons form and send an official capacity service packet, including the amended complaint, [ECF No. 13], to the United States Marshal Service. The United States Marshal is directed to effect service of the amended complaint on the DOC and Correctional Officer Lambert in their official capacities at the Office of the Attorney General, 55 Elm Street,**

Hartford, CT 06141, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) The defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(6) The Clerk shall send a courtesy copy of the amended complaint and this order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

SO ORDERED at Harford, Connecticut this 12th day of July, 2019.

                                                  /s/
                                    Vanessa L. Bryant
                                    United States District Judge